UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        vs.<br><br>LESTER WATERS, JR.,<br><br>                    Defendant. | CR. 18-50015-JLV<br><br><br>ORDER |

## INTRODUCTION

A grand jury indicted defendant Lester Waters, Jr., in a six-count indictment.   (Docket 19).   Mr. Waters is charged in counts I and IV with assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) and 1153; in counts II and V with assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153; and in counts III and VI with discharging, brandishing or possessing a firearm during and in relation to a crime of violence in violation 18 U.S.C. § 924(c)(1)(A)(iii).   Id.   In counts I and II the alleged victim is Elgie Iron Bear and in counts IV and V the alleged victim is Charles Janis.   Id.

Pending before the court is defendant's motion to suppress his statements made to law enforcement on January 25, 2018.   (Dockets 61 & 76 at p. 4:6-11).   Mr. Waters "do[es] not seek suppression of [a] January 29[],

[2018,] statement at the Pine Ridge Adult Offenders Facility." (Docket 76 at p. 4:8-11). The United States opposes defendant's motion. (Docket 83).

Defendant's suppression motion was referred to Magistrate Judge Daneta Wollmann for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's March 9, 2015, standing order. The magistrate judge conducted an evidentiary hearing on November 20, 2018, at which two witnesses testified and four exhibits were received into evidence. (Dockets 74 & 76). The parties submitted post-hearing briefing. (Dockets 79 & 83). The magistrate judge issued a report and recommendation ("R&R") concluding defendant's motion should be granted in part and denied in part. (Docket 87 at p. 1). Defendant timely filed objections to the R&R. (Docket 91). The government filed a response to defendant's objections. (Docket 92).

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

The court completed a *de novo* review of those portions of the R&R to which objections were filed. For the reasons stated below, the court finds the R&R is an appropriate application of the law to the facts presented by the

parties at the suppression hearing.   For the reasons stated below, the

defendant's objections are overruled and the R&R is adopted in its entirety.

The court grants in part and denies in part defendant's suppression motion.

## DEFENDANT'S OBJECTIONS

Defendant's objections to the R&R are summarized as follow:

1.   Mr. Waters objects generally to all factual findings and legal conclusions made by the magistrate judge.

2.   Mr. Waters objects to the magistrate judge's finding that Officer Hunter did not deceive the defendant.

3.   Mr. Waters should have been advised of his Miranda[1] rights prior to being subjected to interrogation by Officer Hunter.

4.   Mr. Waters objects to the magistrate judge's finding his statements were admissible under the public safety exception to Miranda.

(Docket 91).   "For the foregoing reasons," Mr. Waters argues "the district

court should not accept the magistrate court's [R&R] . . . and should grant

Defendant's Motion to Suppress."   Id. at p. 3.

Each of defendant's objections will be separately addressed.

## ANALYSIS

The court completed a *de novo* review of the transcript of the suppression

hearing and the video and audio recordings ("video recording") produced by

Officer Hunter's body camera, his patrol car dash camera, and his patrol car

camera of the backseat area.   (Docket 76 and suppression hearing Exhibits 1-

---

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

4). Unless otherwise indicated, the court's findings of fact are consistent with the findings made by the magistrate judge.

1.  MR. WATERS OBJECTS GENERALLY TO ALL FACTUAL FINDINGS AND LEGAL CONCLUSIONS MADE BY THE MAGISTRATE JUDGE.

"Congress has mandated that the district court give *de novo* review to those portions of a Magistrate's report and recommendation to which objections are made." Belk v. Purkett, 15 F.3d 803, 815 (8th Cir. 1994) (referencing 28 U.S.C. § 636(b)(1)). "There is a court-created exception in some circuits: '. . . [T]he district court need not conduct *de novo* review when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations.' " Id. (citing Johnson v. Knable, 934 F.2d 319 (4th Cir. 1991) (unpublished opinion) (citing Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982); United States v. Merz, 376 U.S. 192, 199, 84 (1964); Pendleton v. Rumsfeld, 628 F.2d 102, 105-06 (D.C. Cir. 1980)). "There is language in an Eighth Circuit case which indicates this Circuit's approval of such an exception." Id. (referencing Branch v. Martin, 886 F.2d 1043 (8th Cir. 1989) ("In the present case, plaintiff's objections to the magistrate's factual conclusions were timely filed and specific enough to trigger *de novo* review. See, e.g., Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984) (per curiam) (no *de novo* review if objections are untimely or general)"). "[D]e novo review is not required 'when a party makes general and conclusory objections that do not

direct the court to a specific error in the magistrate judge's proposed findings and recommendations.' " Hudson v. Gammon, 46 F.3d 785, 786 (8th Cir. 1995) (citing Belk, 15 F.3d at 815) (citations omitted).

The court will address Mr. Waters' specific objections to the R&R as they are "certainly definite enough to require de novo review." Id. (citing Belk, 15 F.3d at 815). The court is not compelled to evaluate defendant's generalized and conclusory objection.

Defendant's first objection to the R&R is overruled.

2.    MR. WATERS OBJECTS TO THE MAGISTRATE JUDGE'S FINDING THAT OFFICER HUNTER DID NOT DECEIVE THE DEFENDANT.

Mr. Waters argues "the entire interaction with law enforcement on January 25, 2018, should be suppressed." (Docket 91 at p. 1). Defendant submits that "[w]ithin seconds of [his] initial relevant interactions with law enforcement, [he] was deceived." Id. According to the defendant the deception occurred by the following colloquy:

> Waters:     You know what?  Can I tell you something that happened, between me and you?
>
> Hunter:     Go ahead

(Exhibit 2 at 45:48 *et seq.*)  Mr. Waters "maintains that this transaction constitutes 'words or actions on the part of the police . . . that the police should know are likely to elicit an incriminating response from the subject.' " (Docket 91 at p. 2) (citing United States v. Bailey, 831 F.3d 1035, 1038 (8th Cir. 2016)). Defendant argues Officer Hunter's deception "laid the foundation for the rest of

Defendant Waters' time in custody." Id. Because he was never given his Miranda rights, Mr. Waters concludes "all January 25, 2018, statements to law enforcement" should be suppressed. Id.

"[T]he government conceded [Mr. Waters] was in custody at the outset of his contact with law enforcement on January 25, 2018, when he was handcuffed and placed in the back seat of Officer Charles Hunter's patrol vehicle." (Docket 92 at p. 3) (referencing Dockets 73 at pp. 5-6; 76 at p. 4:20-24). The government further "conceded" Mr. Waters did not receive his Miranda rights that day. Id.

"[T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Rhode Island v. Innis, 446 U.S. 291, 300–01 (1980). "That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. "The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police." Id. "A practice that the police should know is reasonably likely to evoke an incriminating response

6

from a suspect thus amounts to interrogation." Id. "But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Id. at 301-02.

"Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989) (internal quotation omitted). Miranda "does not preclude admission of statements that a defendant in custody volunteers and that are not the product of any interrogation by the police." United States v. Waloke, 962 F.2d 824, 829 (8th Cir. 1992) (referencing Innis, 446 U.S. at 299–301).

"Voluntariness remains the standard for the admissibility of confessions." United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989) (referencing Brown v. Mississippi, 297 U.S. 278, 279 (1936) (the use of involuntary confessions violates due process). "The test used to apply this constitutionally based standard is whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will." Id. (referencing Haynes v. Washington, 373 U.S. 503, 513-14 (1963); Culombe v. Connecticut, 367 U.S. 568, 602 (1961) ("Is the confession the product of an essentially free and unconstrained choice by its maker?"). "The [United States Court of Appeals for the] Eighth Circuit has also embraced the 'overborne will'

doctrine." Id. (referencing Rachlin v. United States, 723 F.2d 1373, 1377 (8th Cir. 1983)). "Two factors must be considered in the voluntariness inquiry: the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess." Id.

"That a law enforcement officer promises something to a person suspected of a crime in exchange for the person's speaking about the crime does not automatically render inadmissible any statement obtained as a result of that promise." United States v. Walton, 10 F.3d 1024, 1028 (3d Cir. 1993). "[V]oluntariness of a confession does not depend solely upon whether it was made in response to promises. Instead, we must determine voluntariness by judging the totality of the circumstances." Id. "The question in each case is whether the defendant's will was overborne when he confessed." Id. (internal citation omitted). "The burden is on the government to establish, by a preponderance of the evidence, that a challenged confession was voluntary." Id.

While Mr. Waters referred to Officer Hunter by his initials, A.B., a childhood connection, the officer did nothing to play upon their prior relationship to encourage Mr. Waters to speak. Mr. Waters had every reason to know or least suspect he was the subject of a criminal investigation while he sat handcuffed in the backseat of a police vehicle. See Miller v. Fenton, 796 F.2d 598, 607 (3d Cir. 1986) ("Excessive friendliness on the part of an interrogator can be deceptive. In some instances, in combination with other

8

tactics, it might create an atmosphere in which a suspect forgets that his questioner is in an adversarial role, and thereby prompt admissions that the suspect would ordinarily make only to a friend, not to the police.").

Even though the transcript presents a transition from Mr. Waters' question to Officer Hunter's answer, on the video recording Mr. Waters did not even wait for Officer Hunter's "go ahead" response before the defendant proceeded with his explanation of the events that evening. Officer Hunter's statement "go ahead" was not a promise that they were going to speak off-the-record or that Mr. Waters' statement would not be used against him in the investigation. Officer Hunter neither said nor implied Mr. Waters' statement would be kept confidential. "At most," Officer Hunter permitted "a ruse of friendliness to encourage [Mr. Waters] to share information." United States v. Lignelli, 660 Fed. Appx. 118, 123 (3d Cir. 2016). "[T]his is not the type of coercive police conduct courts have found sufficient to render statements involuntary." Id.

Mr. Waters was not "subjected to compelling influences, psychological ploys, or direct questioning" by Officer Hunter and the admission of his statement does not violate his Fifth Amendment rights. Louisell v. Director of Iowa Department of Corrections, 178 F.3d 1019, 1023 (8th Cir. 1999) (citing Arizona v. Mauro, 481 U.S. 520, 529 (1987)). Under the totality of the circumstances, Mr. Waters' statement was voluntarily made without "any direct

or implied promises, coercive tactics or threats." <u>Rachlin</u>, 723 F.2d at 1378.

<u>See</u> <u>also</u> <u>Jorgensen</u>, 871 F.2d at 729.

Defendant's second objection is overruled.

3.    MR. WATERS SHOULD HAVE BEEN ADVISED OF HIS <u>MIRANDA</u> RIGHTS PRIOR TO BEING SUBJECTED TO INTERROGATION BY OFFICER HUNTER

The magistrate judge found one question by Officer Hunter was "reasonably likely to elicit an incriminating response." (Docker 87 at p. 10) (referencing <u>Pennsylvania v. Muniz</u>, 496 U.S. 582, 600-01 (1990)). The question "Hey man, did you drink tonight?" was likely to elicit an incriminating response because possession and consumption of alcoholic beverages are illegal on the Pine Ridge Reservation. <u>Id.</u> For that reason, defendant's response, "[Explicative] yeah!" must be suppressed.[2] <u>Id.</u>

The remainder of defendant's interrogation argument is premised on his belief that Officer Hunter's "go ahead" statement "laid the foundation for the rest of Defendant Waters' time in custody." (Docket 91 at p. 2). For this reason, Mr. Waters argues that "[u]nless cured by an advisement of [<u>Miranda</u>] rights, which never occurred, all January 25, 2018, statements to law enforcement . . . [must be] suppressed." <u>Id.</u>

The court agrees with the findings of the magistrate judge that "[t]he recording of Defendant's interactions with law enforcement while in the squad

---

[2]The government conceded that this question and Mr. Waters' answer should be suppressed. (Docket 79 at p. 2).

car show[s] that Defendant repeatedly initiated very one-side conversations with Officer Hunter and Officer Morgan." (Docket 87 at pp. 10-11). Mr. Waters "volunteered statements" which "constitute[ed] the majority of the video recording, including Defendant's statements to himself while alone in the squad car[.]" Id. at p. 11. These statements "are not protected by Miranda and should not be suppressed." Id. (referencing Miranda, 384 U.S. at 478). The magistrate judge properly analyzed the law regarding volunteered statements and applied those principals to the evidence in this case. Id. at pp. 8-9.

Defendant's third objection to the R&R is overruled.

4. MR. WATERS OBJECTS TO THE MAGISTRATE JUDGE'S FINDING HIS STATEMENTS WERE ADMISSIBLE UNDER THE PUBLIC SAFETY EXCEPTION TO MIRANDA

Mr. Waters objects to the magistrate judge's "application of the public safety exception" to Miranda. (Docket 91 at p. 2). He argues "[t]he questions asked by police were not reasonably prompted by a concern for public safety. Had law enforcement been concerned for the public safety, interactions between Defendant and law enforcement would not have originated by way of Defendant motioning law enforcement to him." Id. Had public safety been a real concern, Mr. Waters submits "[l]aw enforcement would have approached [him] unsolicited." Id.

Analyzing Quarles, the magistrate judge concluded the public safety exception is "an objective standard: the exception applies when 'police officers

ask questions reasonably prompted by a concern for the public safety.' . . . It does not apply to 'questions designed solely to elicit testimonial evidence from a suspect.' " (Docket 87 at p. 9) (citing New York v. Quarles, 467 U.S. 649, 656 & 659 (1984)). The magistrate judge also discussed cases of the Eighth Circuit which analyzed the public safety concern of firearms and other situations which may become a police officer self-protection issue. Id. at pp. 9-10 (referencing United States v. Liddell, 517 F.3d 1007, (8th Cir. 2008); United States v. Watters, 572 F.3d 479 (8th Cir. 2009); United States v. Williams, 181 F.3d 945 (8th Cir. 1999)).

The magistrate judge specifically addressed six questions posed by Officer Morgan. (Docket 87 at p. 11). Without restating those questions here, the magistrate judge found they all "fall squarely within the public safety exception." The magistrate judge found each of the "questions were reasonably prompted by a concern for public safety[.]" Id. Particularly, because the "officers could reasonably fear that a loaded gun was present on-scene, accessible to the public, and [that the other individuals mentioned by Mr. Waters] could be armed." Id.

The court adopts the magistrate judge's evaluation of the evidence in this case. It is clear from Officer Morgan's testimony that his primary purpose was public safety when he asked Mr. Waters about firearms, ammunition and the potential that the other individuals mentioned by Mr. Waters may be armed and dangerous. Firearms in the unsecured, rural

12

setting in which the officers found themselves posed a potential threat to law enforcement.

Defendant's fourth objection to the R&R is overruled.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's objections to the magistrate judge's report and recommendation (Docket 91) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation (Docket 87) is adopted in full.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 61) is granted in part and denied in part consistent with this order.

Dated April 23, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE